ERASMUS FREEMAN, respondent,

*v.*

ISLAND HEIGHTS HOTEL AND IMPROVEMENT COMPANY, appellant.

[Submitted June 24th, 1910.   Decided November 14th, 1910.]

Where a bill is filed to restrain an action at law, founded upon an alleged trespass resulting from the destruction of a fence erected around land which complainant charges he is entitled to have remain open and devoted to a special use by virtue of an implied covenant, and defendant answers denying the dedication and claiming an absolute title to the land free from any implied covenant to which issue most, if not all, the testimony is directed, the court will determine the controversy thus presented, although an inference may be drawn that the building of the fence in itself indicates no intention to subject the land to a use inconsistent with the dedication, for the right to fence the land is rested upon the claim of absolute ownership which the act of fencing asserts, and the real issue presented is the right of defendant to erect and maintain the fence as owner, free from any covenant in complainant's favor, and it ought not to be limited to the question whether or not the fencing is inconsistent with the dedication, because that will not settle the paramount question presented by the pleadings and testimony, and give the parties complete equitable relief in the matter really in dispute.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Walker, whose opinion is reported in *75 N. J. Eq. (5 Buch.) 491.*

*Mr. Wilfred B. Wolcott* and *Mr. Isaac W. Carmichael,* for the appellant.

*Messrs. Grey & Archer,* for the respondent.

The opinion of the court was delivered by

BERGEN, J.

The bill of complaint filed in this cause seeks to enjoin the prosecution of an action in trespass brought by the defendant against the complainant and his son Edgar for tearing down a fence in process of erection by the defendant around a parcel of land at Island Heights in this state, and also to restrain the defendant from erecting any fence or structure around the plot which will prevent the same from being used as a camp ground, or from erecting thereon any hotel or other structure inconsistent with the use of the said premises as a camp ground.

The material facts set up in the bill are that the Island Heights Association, a land improvement company, being the owner of about one hundred and fifty acres of land at Island Heights, caused it to be divided into streets, public places and lots, and a map thereof made showing the lots, their numbers, streets and their names, and also a plot marked "camp ground;" that complainant purchased two of the lots, one in October, 1886, and the other in 1890; that he was shown a map made in 1881, and revised in 1886, upon which the land described in the bill of complaint was marked "camp ground," and purchased his lots upon the representation that the plot or space so marked was to be reserved for use as a camp ground for camp meeting purposes, and that therefore an implied covenant arose that the land in dispute was dedicated to such use. The bill then charges that in derogation of this covenant the defendant, the Island Heights Hotel and Improvement Company, began to enclose the

tract by fencing it, with the declared intention of erecting a hotel on the property, and to prevent this, complainant destroyed the fence.    The prayer of the bill is

"that it may be decreed that the portion of the said 'Camp Ground' here-inbefore designated, the title to which now stands in the Island Heights Hotel and Improvement Company, shall remain open and devoted to the purposes for which it was originally dedicated, and that the said defendant, Island Heights Hotel and Improvement Company, its agents and attorneys be forever restrained and enjoined from erecting any fence or other structure inconsistent with the user of the said premises as a Camp Ground, and that the said defendant, its servants, agents and attorneys, be forever restrained from proceeding further against your orator in the said action commenced against him and the said Alfred Edgar Freeman."

No objection was made to the sufficiency of the bill, but the defendant answered denying the dedication set up, and averred that the completion of the fence would not deprive the complainant of any rights he may have in the land "because defendant avers that neither complainant or any other person has or had any right in said premises."

The issue presented by the bill was that by virtue of the dedication claimed, the complainant had the right to have the use of the land restrained to one not inconsistent with a camp ground, and that the building of the fence was the beginning of a use, which, if continued, would be inconsistent with the dedication.

The defendant, in its answer, after denying that the complainant had any right in said premises, avers that if he had, the building of said fence would not have deprived him of such right.    But the real issue tendered and tried was the question of dedication, and the controlling question heard and determined by the court below was whether the defendant had such an absolute title against the complainant as to justify it in maintaining the fence.    This was the principal question presented by the parties in their pleadings and testimony, and determined by the vice-chancellor.    It is quite clearly indicated in the defendant's answer that it claimed a title paramount to any right alleged by the complainant to exist in his favor under the dedi-

cation, and it emphasized such claim by posting notices threatening to prosecute as trespassers all persons coming on the premises. The posting of such notices is charged in the bill and admitted in the answer, and when considered with the averment in the answer that neither the defendant or any other person has any right in the premises, it is quite evident that the defendant was erecting the fence as an assertion of absolute ownership against all persons.

The real question presented to the vice-chancellor was whether the complainant "has or had any right in the premises," and it would not be consistent with the administration of equity to restrict the consideration of the cause to the narrow ground whether the putting up of the fence was in itself an act inconsistent with the dedication, when the real question, viz.: has the complainant any right in the premises under the dedication claimed, was the one accepted and tried by both parties as the principal issue between them. No testimony was offered by the defendant to explain its purpose in putting up the fence, but we are asked to infer that the building of it did not in itself indicate an intent on the part of the defendant to subject the land to a use inconsistent with the dedication, while the assertion of an absolute right to use the land without interference by the complainant, free from any dedication, would tend to negative any such inference. Considering the entire case it is clear that the building of the fence was an assertion of absolute ownership, and its destruction by the complainant was an act intended to dispute such assertion, and was so accepted and understood by the parties to this litigation. To limit this case to the narrow ground that the putting up of the fence was no indication of an inconsistent user does not dispose of the entire case, and it would require further litigation to settle the really important question of difference between the parties.

The vice-chancellor found that there was a dedication of the land in dispute for camp meeting uses and advised a decree against the defendant from which it has appealed. The evidence of dedication was so conclusive that on the argument in this court the appellant abandoned the claim set up in his answer

that there was no dedication, but, admitting that the land was dedicated for camp meeting purposes, insisted that the decree was erroneous in several particulars which we will consider in the order submitted.

First, that on a map made by the association prior to the one exhibited to the complainant before he purchased, a much larger tract of land than that shown on the later map was dedicated for camp meeting purposes, and that the complainant has himself purchased a portion of the larger tract with the full knowledge of such dedication, erected a house thereon, and has therefore broken the very implied covenant he is seeking to enforce. This claim is based upon the fact that by a map made in 1878 a boulevard or street was shown which is now included as a part of complainant's lot; but this claim gives no force to the fact that when the complainant's land was sold by the Island Heights Association it had prepared another map made in 1881 and subsequently revised in 1886, according to which complainant's grantor bought and which was exhibited to complainant as the map of the property and upon which he relied in making his purchase. This map extended all of the lots in block 27, in which the land in controversy is located, on each side of the space marked "camp ground" to the river line, and extinguished the boulevard to that extent. Following this map the description of the complainant's lot in the deed made to his predecessor in title was bounded on the river, and when the deed was given the camp ground extended from the river to Ocean avenue between lots which were undoubtedly a part of the land originally marked "camp meeting grounds," so it appears that complainant's lot is a part of a tract marked on the earlier map of 1878 as camp meeting grounds, and also a part of what was marked as a boulevard on that map. The lot is not a part of the land dedicated as camp meeting grounds by the map of 1881, according to which his predecessor in title bought from the original owner, but the southerly portion of the lot does embrace a part of the boulevard, and so it is contended that even if no part of this lot is within the camp meeting ground, as shown on the map of 1881, nevertheless it in part embraces a

public highway, and that the occupation of it by complainant is a violation of the covenant. But the situation presented is not one of restrictive covenants in furtherance of a general scheme, but of dedication. If the complainant had built his house upon a part of the camp ground as it appeared on the map of 1881, a different question would be presented, for then he would be occupying ground devoted to a special purpose which all of the lot owners, by implied covenants, would be entitled to have devoted to such special use, and it might then be said that he was violating the covenant which he was seeking to enforce, but this does not apply to the boulevard which all of the public may have the right to use as a highway, under a general dedication for public use, and not because of an implied covenant with the lot owners. We agree with the vice-chancellor that this point is not well taken.

The second ground urged for reversal is that the implied covenant does not exist in favor of the complainant because he did not purchase on the faith of any representation made by the Island Heights Association. We think that the facts show that he did. He certainly saw the map of 1881 in the hands of Mr. Simpson, the superintendent of the association, and that it was a map authorized and used by the association in making sales does not seem to be disputed. On this map an open space was shown marked "camp ground," and we think the complainant had the right to rely upon the map as a representation of the situation, for in the deed to his grantor the map is referred to in part description of the lots, and the map represented what rights by way of implied covenants his grantor had taken by the conveyance to him, all of which passed to complainant by his grantor's deed. We find no merit in this objection.

The third point urged is that so much of the decree as adjudges that under the dedication the land in question "was devoted by the Island Heights Association as a camp meeting ground upon which services could be conducted under the auspices and control of the Methodist Episcopal denomination" is not justified by the evidence. The dedication was limited to a use not inconsistent with a camp ground, and under the evi-

dence it may fairly be said that the ground was dedicated as a place for holding camp meetings, but it is not limited to meetings of that character held by the Methodist Episcopal denomination alone. The deed to complainant's grantor and other deeds by the Island Heights Association offered in evidence as proof of the dedication contain the condition that the conveyance is accepted "subject to the rules, by-laws and regulations which may from time to time be adopted by the said association for the protection, government and control of the camp meetings and other assemblies to be holden within their premises from year to year." This not only does not limit the use to camp meetings of one denomination, but extends it to other assemblies, from which it would appear that the grantor reserved the right to reasonably regulate the holding of meetings on the dedicated property, although not authorized to put it to a use incompatible therewith, and as the Island Heights Association was not incorporated as a religious organization, no inference arises from the character of the company that by the dedication it was intended that the meetings or assemblies would or should be limited to those of a particular denomination. Under the terms of the dedication the complainant is not entitled to have the use of the ground restricted to camp meetings held by the Methodist Episcopal denomination, and the decree must be modified to conform to the dedication.

The next objection to the decree is that a fence around the land would not be inconsistent with its use as a camp meeting ground. If the defendant had chosen to rest its defence on this ground alone, it might have some force, but as we have said in the earlier part of this opinion, the defendant claims the absolute title free from any implied covenant growing out of the dedication and deed to complainant's grantor, and in its petition of appeal sets out as a ground for reversal that

"the said defendant is the owner of said land in fee-simple, and it should not be restrained from using the land in any way it sees fit, and it should not be restrained and enjoined from in any manner whatsoever interfering with the use of the said land and real estate for the purpose aforesaid,"

thus raising here the main ground of contention set out in its answer and submitted to the court below for its determination.

Another ground for reversal it is claimed exists because the decree affects the rights of persons not parties to the suit. This is rested upon the fact that although after the dedication and purchase by complainant, the association dedicated two parcels of land, part of the camp meeting ground, of the width of thirty feet for public streets, and also conveyed a small lot thirty feet wide fronting on the river to Angelina D. Brinley, who subsequently conveyed it to James Bryant, the present owner, neither the borough of Island Heights or Bryant are made parties to this suit, and as the decree adjudges that the streets and the Bryant lot were dedicated to camp meeting grounds, the rights of the borough and of Bryant have been affected without giving them an opportunity to be heard. As to the Bryant lot the bill of complaint sets out its conveyance in 1893, and that it was a part of the camp meeting lot as shown on the map of 1881, revised in 1886, but the decree includes the lot as a part of the land adjudged to be devoted by dedication to camp meeting purposes, and to affirm this decree as it stands would adjudge the rights of one not a party. The want of proper parties was not raised below, but this court will not determine the right of the complainant against those not called upon to answer the claim established by the decree. *McLaughlin* v. *Van Keuren et al., 21 N. J. Eq.* (*6 C. E. Gr.*) *379*. As to the streets, it appears that in 1883 they were dedicated by the Island Heights Association "for the free and unobstructed use of the public of the borough of Island Heights," by a deed duly executed and recorded, since which time they have been controlled by the borough and all work on them has been done and paid for by it. This does not appear to be denied by the complainant, and he having acquiesced in this control by the borough for over twenty years, it will be assumed that he has waived any implied covenant he had to have the streets devoted to camp meeting purposes. The decree should therefore be so modified as to exclude from the adjudication the streets and the Bryant lot, and limited to that land which appellant claims to own in fee-simple. It is also urged that the decree should be reversed because it enjoins the trespass suit against the

complainant's son, who is a joint defendant therein. No such objection was raised below by any pleading, nor is it mentioned in the petition of appeal as a ground for reversal, and as the defendant here has put its right to prosecute both father and son as joint defendants in the suit at law upon the ground that it has an absolute title to the land, free from the implied covenant claimed, no such injustice is done it by the decree in this particular as to require the entertaining of this question for its protection, notwithstanding it was not raised below. In order that the decree may be modified as indicated in this opinion, it will be reversed and the record remitted to the court of chancery for the purpose of such modification. As the appellant has been obliged to come to this court to correct the decree, it should have costs on the appeal including printing.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, DILL, CONGDON—12.